UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOANNA MARIE WILSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-1569 |
| | § | |
| NAVIKA CAPITAL GROUP, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. 420) and Defendants' Response (Doc. 430), and Defendants' Motion for Omnibus Relief (Doc. 443) requesting sanctions and summary judgment, or alternatively, for decertification of the collective action, Plaintiffs' Response (Doc. 444), and the Reply thereto (Doc. 445).  After considering the motions and responses, the facts of this case, and the applicable law, the Court finds that Plaintiffs' motion for partial summary judgment should be denied, and Defendants' motion for omnibus relief should be granted in part and denied in part.

## I.     Background

On May 3, 2010, Plaintiffs Joanna Marie Wilson and Ashley Rachel DeLeon (collectively, "Plaintiffs") filed this suit against Defendants Navika Capital Group, LLC ("Navika"), Pearl Hospitality, LLC ("Pearl"), Ruby Hospitality, Inc. ("Ruby"), Naveen Shah ("Shah"), and Esperanza Gutierrez ("Gutierrez"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*.  Pl.'s Original Compl. (Doc. 1).[1]  According to Plaintiffs'

---

[1] Esperanza Gutierrez has been dismissed from the case pursuant to stipulation of the Parties.  Order of Dismissal (Doc. 386).

complaint, at the time of their employment as front desk clerks in at the Holiday Inn Express in Pearland, Texas and the Baymont Inn & Suites in Ennis, Texas, they were denied overtime wages. *Id.* at ¶¶ 20, 22. Navika, Ruby, and Pearl operate these hotels, and Shah is the owner of Navika. *Id.* at ¶¶ 17–18. According to the complaint, Shah dictated Plaintiffs' working hours and compensation. *Id.* at ¶ 18. Plaintiffs claim that Defendants intentionally misrepresented the number of actual hours that they worked and withheld earned overtime compensation. *Id.* at ¶¶ 20-22.

Plaintiffs filed the action on behalf of themselves and a class of "similarly situated persons." *Id.* at ¶ 9. Plaintiffs allege that Defendants did not make a good faith effort to comply with the FLSA, but acted knowingly, willfully, or with reckless disregard in depriving employees of overtime wages. *Id.* at ¶ 24. They seek damages for unpaid minimum and overtime wages, in an amount to be proven at trial, as well as liquidated damages and attorney's fees and costs. *Id.* at ¶ 35. On November 12, 2010, Plaintiffs moved for conditional certification of a class consisting of "all current and former non-exempt employees of Navika Capital Group, LLC, Pearl Hospitality, LLC, Ruby Hospitality, Inc., Naveen Shah, and/or Esperanza Gutierrez who were not paid minimum wage and overtime wages in the past three years." Pl.'s Emergency Mot. for Conditional Certification, at p. 9 (Doc. 11). In support of their motion, Plaintiffs introduced four affidavits from employees alleging that they routinely worked more than forty hours in a single week and were not paid overtime. Affs. Of Joanna Marie Wilson, Ashley DeLeon, Steve Vinker, and Sheila Collins (Docs. 11-2; 11-6; 11-8; 11-10). The affidavit of Sheila Collins, a former manager, states that she was instructed by an employee of Navika to falsify other employees' time on the payroll "so as to avoid Navika Capital having to pay overtime to these employees." Doc. 11-10.

In Defendants' response to Plaintiffs' motion, they argued that certification of the proposed class would not be appropriate because the class members are not all similarly situated. Navika operates approximately twenty-three different properties, only eleven of which are hotels, which are located in six different states and employ approximately 250 non-exempt employees.  Def.'s Resp. to Pl.'s Emergency Mot. for Conditional Certification, at p. 2–3 (Doc. 18); Aff. of Naveen C. Shah, at ¶¶ 4–5 (Doc. 18-1).  In support of their response, Defendants offered the affidavit of Defendant Naveen Shah, wherein he explains that Navika does not actually own any of the hotels.  Doc. 18-1, at ¶ 3.  Instead, each hotel is owned by a separate corporate entity and Navika owns stock in each of those entities.  *Id.* at ¶ 4.

The Court denied Plaintiffs' motion for conditional certification, finding that the affidavit evidence offered by Plaintiffs did not support a finding of similarly situated employees beyond the two hotels where the named Plaintiffs were employed.   Order Denying Pl.s' Mot. for Conditional Certification, at p. 6 (Doc. 26).  Thereafter, Plaintiffs moved the Court to reconsider its order in light of new facts that "Defendants have been cited by the Department of Labor for overtime and minimum wage violations with respect to over 135 hotel employees at several locations in addition to the two at which plaintiffs were employed."[2]   Pl.'s Mot. for Reconsideration of Order, at p. 1 (Doc. 28).   The Court granted Plaintiff's motion for reconsideration and conditionally certified a class consisting of "current and former non-exempt hotel employees of Defendants Navika Capital Group, LLC, Pearl Hospitality, LLC, Ruby Hospitality, Inc., Naveen Shah, and Esperanza Gutierrez who were not paid minimum and overtime wages between May 3, 2007 and today."  Opinion and Order Granting Pl.'s Mot. for Reconsideration of Order, at p. 3 (Doc. 34).  Notice was sent to the putative class members and

---

[2] Plaintiffs obtained these facts as a result of a FOIA request to the Department of Labor.  Supplement to Emergency Mot. for Class Certification at 2 (Doc. 25).

approximately 330 Plaintiffs (collectively, "Opt-In Plaintiffs") returned consent forms. *See* Consent to Join a Collective Actions (Docs. 32-1; 32-2; 52-314; 316-360; 362-380; 384; 387-388; 390; 408-409; 412; 424; 426).

Following the issuance of notice, discovery proceeded on a collective basis. A very contentious discovery dispute ensued resulting in numerous motions, mostly referred to Magistrate Judge Stacy. *See* Pl.'s Mot. to Compel Produc. of Doc. (Doc. 410); Def.'s Mot. to Compel Produc. of Doc. (Doc. 414); Pl.'s Mot. for Contempt (Doc. 416). Many of the arguments in these motions centered on the issue of whether Defendants were entitled to class-wide discovery or to discovery for only a select representative sample of Plaintiffs. *See* Doc. 414; Pl.'s Resp. to Def.'s Mot. to Compel Produc. of Doc. (Doc. 425); Defendant's Reply to Pl.'s Resp. (Doc. 432). Defendants filed a motion to compel discovery responses on a class-wide basis and Magistrate Judge Stacy granted Defendants' motion in part, and directed all Plaintiffs to respond to certain of Defendant's interrogatories within thirty days of the order. Order Granting Def.'s Mot. to Compel (Doc. 433). The interrogatories to which Plaintiffs were compelled to respond requested the following information: name, employer, dates of employment, job title, job duties, pay rate, manner of recording time, number of non-overtime hours for which Plaintiff alleges he or she was not properly compensated, and number of overtime hours for which Plaintiff alleges he or she was not properly compensated. *See, e.g.,* Answers to Navika Capital Group, LLC's First Set of Interrogs. at p. 7–8 (Doc. 443-7). Plaintiffs requested an extension of time to comply with the discovery order. Pl.'s Mot. for Extension of Time (Doc. 437). Magistrate Judge Stacy granted Plaintiffs' motion, giving Plaintiffs until "August 2, 2013, and no later, to Comply..." Order Granting Pl.'s Mot. to Extend Time (Doc. 441).

By the August 2, 2013 deadline, twenty-nine Opt-In Plaintiffs had submitted verified interrogatory responses and seventy-three had submitted unverified responses. Doc. 445, at p. 3. Thereafter, another fifty Opt-In Plaintiffs submitted untimely interrogatory responses and/or verifications. *Id.* Seven Opt-In Plaintiffs provided only verifications with no accompanying responses, and numerous others failed to provide any response whatsoever. *Id.* at p. 3–4.

Discovery has revealed that the current class includes current and former employees of over twenty corporate Defendants.[3]  Plaintiffs were employed in eleven different hotels located in six different states. Doc. 443, at p. 34.  Each location was run by a different manager. *Id.* Plaintiffs held a wide variety of jobs including: kitchen staff, dishwasher, server, bartender, breakfast host, breakfast manager, banquet manager, housekeeper, housekeeping supervisor, front desk clerk, manager, general manager, director of sales, night auditor, inspector, maintenance staff, and groundskeeper. *Id.* at p. 33–34.  Plaintiffs holding these various positions were compensated in different methods including salary, hourly, piece-rate, and tips. *Id.* at p. 35–36.  Most Plaintiffs allege that they did work overtime and were denied overtime compensation. *See e.g.,* Doc. 443-7, at p. 7-154.  However, approximately twenty-nine Plaintiffs state that they never worked overtime. Doc. 443, at p. 43.

In support of their motion for partial summary judgment, Plaintiffs introduced an excerpt from the deposition of Chirag Tolia. Dep. of Chirag Tolia (Doc. 420-2).  Tolia's title with Navika Capital Group is "analysis in risk management," but both he and Shah admitted that he

---

[3] Corporate Defendants include: Pearl Hospitality, LLC in Pearland, TX; Ruby Hospitality, Inc. in Ennis, TX; Silverstone Hospitality, Inc. in Mobile, AL; Jin Hospitality, LLC in Plainville, CT; Rishabh, LLC in Hartford, CT; Shree Keshav, LLC in Cumming, GA; Ginayk, LLC in McDonough, GA; Shree Vinayak, LLC in McDonough, GA; Hare Krishna Hare Rama, LLC in Stockbridge, GA; Navka, LLA in Hinesville, GA; Premier Hotel Groups II, LLC in Columbia, MO; Emerald Hospitality, Inc. in Owasso, OK; Emerald Hospitality Tulsa in Tulsa, OK; Sapphire Hospitality, Inc. in Arlington, TX; Lotusel Group, LLC in Garland, TX; Moonstone Hospitality, Inc. in Houston, TX; Garnet Hospitality, Inc. in Killeen, TX; Sunstone Hospitality, Inc. in Stephanville, TX; Yellow Sapphire Hospitality, Inc. in Texas City, TX; Kohinoor Hospitality, Inc. in Weatherford, TX; and Green Mountain Hospitality, LLC in Front Royal, VA.  Doc. 443 at 35 n.7.

exercised some authority over Navika's payroll.  *Id.* at 43:22–45:11.  Tolia testified that Shah told him "to make sure that payroll doesn't go above 80 hours and not to look at 40–40 for each week."  *Id.* at 47:24–48:16.  He testified that there were many instances when he reviewed payroll registers and found that employees who had worked in excess of 80 hours within a two-week period were paid straight time.  *Id.* at 73:24–74:5.  When he brought these instances to the attention of Shah, "[Shah] clearly informed [Tolia] that [Shah] doesn't want to pay employees for the overtime hours that they have done, which is about 80 hours as per [Shah] and to report all the hours as regular hours instead of mentioning [them under] overtime."  *Id.* at 74:6–15.  Tolia's deposition also included the following exchange:

> Q:  …. So long before you ever saw your first payroll register you knew that anyone that had 80 hours—over 80 hours in a two-week period was going to be straight time and not overtime because that's the directive that was issued by Mr. Shah?
>
> A:  I wouldn't say if you saw the first payroll register, but since I started reporting payroll I was informed that—not to report overtime wages for people who worked for over 80 hours.
>
> Q:  Okay.  And when you say, "not to report," I think what you mean is—
>
> A:  Not to pay overtime wages….
>
> Q:  And during the entire time you were the payroll manager, did that direction from Mr. Shah ever change?
>
> A:  No, not that I can recall. "

*Id.* at 76:2–77:25.

Tolia also testified that several employees complained at various times about not receiving overtime pay.  *Id.* at 86:2–17.  In most instances, Tolia relayed the complaints to Shah.  *Id.* at 86:24–87:25.  Shah responded that "the policy remains the same of not paying anybody more than 80 hours on a biweekly basis in overtime."  *Id.* at 88:1–6.  Tolia also testified about a

meeting he had with a representative from the Department of Labor sometime during the fall of 2008 regarding wage violations at the Pearland motel.  *Id.* at 50:6–51:12.  Tolia testified that during that meeting, he was informed that employees are entitled to time-and-a-half for hours worked in excess of 40 hours per week.  *Id.* at 51:15–22.  He relayed the substance of the discussions that took place during that meeting to Shah.  *Id.* at 51:23–52:4.

Plaintiffs also introduced an excerpt from Shah's deposition wherein he testified that he does not contend that any of the plaintiffs in the lawsuit are exempt under the FLSA.  Dep. Of Naveen C. Shah, at 60:16–21; 61:12–14 (Doc. 420-1).  Lastly, Plaintiffs offered a compliance agreement between Navika and the Department of Labor, signed and dated by Shah on November 5, 2010.  Dept. of Labor Compliance Agreement (Doc. 420-3).  The agreement explains that the Department of Labor's investigation into Navika's FLSA violations revealed underpayments totaling $64,428.73 due to ninety-eight employees.  Violations of the FLSA's recordkeeping requirements were also found by the investigation.  *Id.*  By signing the agreement, Shah confirmed that he would comply with the requirements of the FLSA or face monetary penalties.  *Id.*

Based on the compliance agreement and the deposition testimony of Tolia and Shah, Plaintiffs moved for summary judgment on the issue of Defendants' liability for FLSA overtime violations.  Doc. 420.  Plaintiffs argue that the evidence provided in their motion, and the exhibits attached thereto, establishes that there is no genuine issue of material fact that Defendants willfully violated the FLSA.  *Id.* at p. 1.  Defendants respond by arguing that Plaintiffs failed to sustain their initial burden to establish a *prima facie* case.  Doc. 430, at p. 1.

Thereafter, Defendants filed their motion for omnibus relief wherein they request sanctions for Plaintiffs' failures to comply with the discovery order, summary judgment as to all

claims, or alternatively, decertification of the action.  Doc. 443.  Plaintiffs filed a response to

Defendants' motion (Doc. 444) and Defendants replied (Doc. 445).  Both Plaintiffs' motion for

partial summary judgment and Defendants' motion for omnibus relief are ready for adjudication.


## II.     Defendants' Motion for Sanctions

Defendants contend that Plaintiffs have not fully complied with the Magistrate Court's

discovery order, and ask the Court to impose sanctions for the various deficiencies in Plaintiffs'

interrogatory responses.  Defendants argue that the Court should sanction Plaintiffs pursuant to

Rule 37 by (1) dismissing the claims of all Plaintiffs who failed to respond to the interrogatories;

(2) dismissing the claims of all Plaintiffs who submitted unverified interrogatory responses in

violation of Rule 33; and (3) dismissing all remaining Plaintiffs for failing to set forth damages

or computations thereof in violation of Rule 26.  The Court considers the propriety of dismissal

under each of these bases in turn.

### A.     *Dismissal for Failure to Respond to Defendants' Interrogatories*

Defendants argue for dismissal or default judgment under Federal Rule of Civil

Procedure 37 for the claims of all Plaintiffs who did not respond to the interrogatories.  Doc. 443,

at p. 7.  In Plaintiffs' response to Defendants' motion, Plaintiffs contend that complying with the

Magistrate Court's order has been a significant undertaking given the size and geographic

dispersion of the class, and in light of the fact that many of the Plaintiffs are "transient hotel

workers that are barely literate."  Doc. 444, at p. 1.  Plaintiffs' counsel claims that in spite of

these challenges, he has made repeated attempts to contact each and every class member to

obtain responses.  *Id.* at p. 3.  Even after the expiration of the August 2, 2013 deadline, Plaintiffs'

counsel continued to provide verifications and responses, and as of the date of Plaintiffs' response on September 21, 2013, they had provided an additional thirty-six verifications. *Id.*

### 1. *Legal Standard for Dismissal Under Rule 37(b)(2)*

Federal Rule of Civil Procedure 37(b)(2)(A)(v) authorizes a district court to dismiss an action or proceeding in whole in part for a party's failure to obey a discovery order. *See Baston v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). Although not unlimited, the district court has broad discretion in fashioning appropriate sanctions under Rule 37. *Chilcutt v. U.S.*, 4 F.3d 1313, 1320 (5th Cir. 1993). The Fifth Circuit has stated that the following factors must be present before a district court may order dismissal as sanction for violating a discovery order: (1) the refusal to comply must result from willfulness or bad faith and be accompanied by a clear record of delay or contumacious conduct; (2) violation of the discovery order must be attributable to the client instead of the attorney; (3) the violating party's misconduct must substantially prejudice the opposing party; and (4) the desired deterrent effect is not achievable by the imposition of a less drastic sanction. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994). Dismissal is "a sanction of last resort, only applicable in extreme circumstances." *Emerick v. Fenick Indus, Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976). "Lesser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice." *Bryson v. U.S.*, 553 F.3d 402, 403 (5th Cir. 2008) (citation omitted).

### 2. *Discussion*

As to the Opt-In Plaintiffs who submitted interrogatory responses before August 27, 2013, the date of Defendants' reply in support of their omnibus motion for relief, the Court holds that they may remain in the class. As to the Opt-In Plaintiffs who did not respond before August 27, 2013, they are dismissed without prejudice.

The Court recognizes that the general characteristics of the class, including geographic dispersion and many transient members and members with limited literacy, hampered Plaintiffs' counsel in obtaining compliance with the discovery order.  In ordering sanctions the Court views the plaintiff class with leniency.  The late-responding Plaintiffs' inability to meet the deadline was likely due to their failure to keep Plaintiffs' counsel apprised of a current address or failure immediately to understand the nature and implications of the discovery request.  While this is clearly a failure of the Plaintiffs, and not of Plaintiffs' counsel, the Court does not find that Defendants were substantially prejudiced by the late-filed responses.  In Defendants' omnibus motion and reply in support thereof, they addressed all of the interrogatory responses filed as of that date and relied on those responses to argue that the Plaintiffs were not similarly situated for purposes of class certification.  As indicated *infra*, the Court carefully considered these arguments in ruling on Defendants' motion for decertification.  Accordingly, the Court does not find that Defendants were substantially prejudiced by the late filed responses and therefore, does not dismiss the interrogatory responses filed before August 27, 2013.

The Court finds that the four factors articulated in in *F.D.I.C. v. Conner* weigh in favor of dismissal for those Plaintiffs who responded to Defendants' discovery requests after August 27. Recognizing the challenges posed by the unique characteristics of the putative class, the Court orders the lesser sanction of dismissal without prejudice.  However, because the applicable statute of limitations in this case likely bars refiling of the action, the Court nevertheless conducts this analysis under the four factors outlined in *F.D.I.C. v. Conner*.  *See Rice v. MgBakor*, 560 F. Supp.2d 508, 510-11 (N.D. Tex. 2008) (Dismissals without prejudice are still reviewed under the same standard as dismissals with prejudice where the likely practical effect is a dismissal with prejudice.).

The non-responding Plaintiffs voluntarily signed and filed consent notices to participate in this action, thereby subjecting themselves to discovery.  Plaintiffs were afforded an extension by the Magistrate Court and, according to Plaintiffs' response, Plaintiffs' counsel has made repeated attempts to contact each Plaintiff.  Doc. 444, at p. 3.  Whatever the reason for their failure to respond, the Court finds that Defendants are prejudiced by allowing them to remain in the action.  The conditionally certified class includes Plaintiffs from at least eleven hotels located in a number of states.  Evidence in the record suggests that Navika's pay policies were not uniform across all of its hotels.[4]  As such, some of the Opt-In Plaintiffs may have been subject to different overtime pay practices than the named Plaintiffs.  Defendants were entitled to discovery on this issue to determine whether the Opt-In Plaintiffs are in fact similarly situated.  Less drastic sanctions are not available in this instance to avoid prejudice to Defendants.  Therefore, the Plaintiffs who responded to Defendants interrogatories after August 27, 2013 are dismissed without prejudice.

### B.   *Dismissal for Failure to Verify Answers to Interrogatories*

Defendants argue for dismissal under Rule 37 of the Plaintiffs who failed to verify or to timely verify their responses to Defendants' interrogatories in accordance with Rule 33(b)(3).  Doc. 443 at p. 14.  Rule 33(b) provides, "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing *under oath*."  FED. R. CIV. P. 33(b)(3) (emphasis supplied).  The Court finds that dismissal is an unduly harsh sanction for failure to verify interrogatory responses, particularly in a collective action where Plaintiffs' counsel is precluded from overseeing the execution of every single verification.  However, the Court recognizes the

---

[4] Payroll Manager Chirag Tolia testified during his deposition that for some properties, Navika's policy is to pay overtime for hours worked in excess of 40 per workweek, while for other properties, Navika's policy is to pay overtime for hours worked in excess of 80 per two workweeks.  He does not know the basis for this distinction. Dep. Of Chirag Tolia at 80:4–14.

importance of the verifications for establishing the truth of the contents of the interrogatories, and therefore orders that the all of the responses submitted prior to August 27 must be supplemented with a verification within twenty (20) days of the Court's order.  Any Plaintiff who fails to comply with this order will be dismissed from the case without prejudice.

### C.    Dismissal for Failure to Provide a Computation of Damages

Defendants argue for dismissal of all remaining Plaintiffs under Rule 37(c)(1) on the basis of their failure to provide a computation of damages as required by Rule 26.  Doc. 443 at p. 17.

### 1.    Legal Standard for Dismissal Under Rule 37(c)(1)

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires the disclosure of "a computation of each category of damages claimed by the disclosing party."  Rule 37(c)(1) gives teeth to the mandates of Rule 26 by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that was not properly disclosed.  *In re Enron Corp. Sec., Derivatives & "ERISA" Litig.*, MDL No. 1446, 2007 WL 5023541, at *1 (S.D. Tex. Feb. 1, 2007).  Under Rule 37, the undisclosed evidence is automatically excluded unless the Rule 26 violation was harmless or substantially justified.  *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009).  To determine whether the violation was harmless or substantially justified, the court considers the following four factors: (1) the non-disclosing party's explanation for its noncompliance; (2) the importance of the evidence; (3) the potential prejudice to the opposing party in allowing the evidence; and (4) the availability of a continuance.  *Id.* (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2009).

2.    *Discussion*

Plaintiffs have attempted to justify their refusal to withhold computations of damages by arguing that Defendants are not entitled to individualized discovery in a collective action.  Doc. 425, at p. 4.  The Court recognizes that the right to individualized discovery in an FLSA collective action is unsettled, and therefore finds in Plaintiffs' favor on this first factor.  *Compare Adkins v. Mid-American Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (precluding individual discovery in FLSA case as inappropriate under the circumstances) *with Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 451 (S.D.N.Y. 1995) (permitting individualized discovery relating to damages in opt-in class action).  However, the Court holds that Plaintiffs will be required to prove damages in this case.  Under the FLSA, an employee must produce sufficient evidence to show the amount and extent of work performed for which he was improperly compensated as a matter of just and reasonable inference.  *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 420 (5th Cir. 1975)).

Rule 26 imposes a duty upon Plaintiffs to disclose their damages prior to trial and Defendants have exercised their right to this disclosure.  *See Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376, 385 (E.D. Tex. 1997) (finding that Rule 26 required disclosure of damages computations for both the named plaintiffs and the putative class of employees bringing an action under Title VII; and where plaintiffs had been provided with the documentation which they deemed essential for making such computations, nothing prevented them from making the disclosures).  In this case, Defendants provided the relevant employment records, thereby enabling Plaintiffs to make these disclosures more easily.  *See* Doc. 417.  The evidence of Plaintiffs' damages is important to Defendants' preparation for trial and the Court finds that

Defendants will be prejudiced if it is not disclosed.  Therefore, the second and third factors weigh in favor of Defendants.

The Court finds that the trial continuance issued in this order will allow time for Plaintiffs who remain in the action following this order to provide individual damages computations. Therefore, the Court orders that Plaintiffs provide Defendants with individual damages computations within twenty (20) days of this order.  Plaintiffs who do not provide an individual computation of damages will be dismissed without prejudice.  *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (holding that the district court acted within its discretion by severing plaintiffs who opted in to an FLSA collective action and who failed to disclose damages calculations without substantial justification).


III.    **Motions for Summary Judgment**

Both parties now move for summary judgment.  Plaintiffs move for partial summary judgment on the issue of Defendants' liability under the FLSA.  Pl.'s Mot. for Partial Summ. J., at p. 1 (Doc. 420).  In addition, Plaintiffs request summary judgment as to Defendants' lack of good faith with respect to the alleged FLSA violations and the concomitant issue of liquidated damages.  *Id.*  Defendants move for summary judgment on the ground that Plaintiffs fail to establish a *prima facie* case.  (Doc. 443).  Each motion is considered below.

A.    *Legal Standard for Summary Judgment*

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving part is entitled to summary judgment as a matter of law.

FED. R. CIV. PRO. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if a party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding any of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. 323-24. There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 250; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir.

2006).  To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  The court is not required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.).

### B.    *Fair Labor Standards Act*

The substantive law governing this suit is the FLSA.  Therefore, it dictates which facts are material to Plaintiffs' claims.  *Anderson*, 447 U.S. at 248.  Section 207 of the FLSA requires employers to pay all nonexempt employees at least one and a half times their regular rate of pay

for hours worked in excess of forty per work week.[5]  *Rainey v. McWane, Inc.,* 314 Fed. Appx. 693, 694 (5th Cir. 2009), citing 29 U.S.C. § 207(a).  Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable for "unpaid overtime compensation ... and in an additional equal amount as liquidated damages."  Moreover "any person who repeatedly or willfully violates Section 206 or 207, relating to wages, shall be subject to a civil penalty not to exceed $1,100 for each such violation."  29 U.S.C. § 216(e)(2).[6]  "An employee alleging a violation of the overtime requirement bears the burden of proving the following *prima facie* case, by a preponderance of the evidence: (1) that there exists an employer-employee relationship; (2) that there was engagement in activities within the coverage of the FLSA; (3) that the employee worked over forty hours within a workweek without overtime compensation; and (4) a definite amount of compensation is due."  *Reyes v. Texas Ezpawn, L.P.*, No. 6:03-cv-128, 2007 WL 3143315, *1 (S.D. Tex. Oct. 24, 2007) (citing *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 892 (E.D. Tex. 1997)).

"An employee seeking unpaid overtime compensation under the FLSA must first demonstrate that he "performed work for which he was not properly compensated."  *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 445 (5th Cir. 2009) (citing *Anderson v. Mr. Clemens Pottery Co.*, 328 U.S. 680, 686 (1946)).  "Where the employer has

---

[5] Section 207(a) does not apply to those "employed in bona fide executive, administrative, or professional capacity."  *Rainey,* 314 Fed.Appx. at 694–5, citing 29 U.S.C. § 213(a)(1).  Exemption is narrowly construed against the employer, and the employer bears the burden of demonstrating that an employee is exempt.  *Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 402 (5th Cir. 2002), *citing Dalheim v. KDFW–TV,* 918 F.2d 1220, 1224 (5th Cir. 1990). Whether an employee is exempt or not exempt under FLSA is mainly a fact issue determined by his salary and duties and applications of the factors in 29 C.F.R. § 541.200(a), but the ultimate decision is a question of law.  *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 330–31 (5th Cir. 2000); *McKee v. CBF Corp.,* 299 Fed.Appx. 426, 429 (5th Cir. 2008).  For discussion of exemptions *see, e.g., Thibodeaux,* 328 F.3d 742; *Vela,* 276 F.3d 659.

[6] Under FLSA, a violation is "willful" if the employer "'either knew or showed reckless disregard for ... whether its conduct was prohibited by the statute.'"  *Singer v. City of Waco, Tex.,* 324 F.3d 813, 821 (5th Cir. 2003), *quoting Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir. 1994).  The plaintiff bears the burden of demonstrating that the FLSA violation was willful.  *Id.*

failed to keep accurate or adequate records… an employee is deemed to have met his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.*  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  *Id.*

### C.      *Analysis*

Plaintiffs argue that the evidence provided in their motion and the exhibits attached thereto establish that there is no genuine issue of material fact that Defendants willfully violated the FLSA, thereby entitling them to liquidated damages.  Doc. 420, at p. 5.  Defendants contend in both their response to Plaintiffs' motion for partial summary judgment and in their motion for omnibus relief that they are entitled to summary judgment on Plaintiffs' FLSA claims.  Doc. 430, at p. 6; Doc. 443, at p. 21–26.  Defendants argue that because Plaintiffs refused to provide responses to Defendants' discovery requests, they may not now offer evidence previously withheld in order to establish a *prima facie* case on their motion for partial summary judgment. Def.'s Resp. to Pl.'s Mot. for Summ. J., at p. 1–2 (Doc. 430).

Defendants further contend that even if the Court were to consider the evidence submitted by Plaintiffs, that evidence would not sustain Plaintiffs' burden to prove FLSA violations.  *Id.* at p. 6.  Defendants argue that where the employees fail to sustain their *prima facie* burden in an FLSA action, the employer is automatically entitled to summary judgment as a matter of law on the issue of liability.  *Id.*  In support of this argument, Defendants rely on *Von*

*Friewalde v. Boeing* where the Fifth Circuit affirmed a grant of summary judgment for the employer on the issue of FLSA liability as to several opt-in plaintiffs because those plaintiffs "had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories in support of their claims," but failed to do so.  *Von Friewalde*, 339 Fed. Appx. at 456.

Defendants argue in the alternative that material issues of fact preclude summary judgment for Plaintiffs.  Doc. 430, at p. 8.  Defendants claim that the evidence relied on in Plaintiffs' motion, including the purported admissions of FLSA violations by Tolia and the concession that the Plaintiffs are not exempt by Shah, are directly refuted by other portions of Tolia and Shah's depositions, and by the declaration of Shah, wherein he declares that he has "never instructed anyone not to pay overtime that was earned."  Decl. of Naveen C. Shah, at ¶ 5 (Doc. 430-1).  In Defendants' motion for omnibus relief, they offer the additional argument that the Court should grant summary judgment for Defendants as to the claims of the Opt-In Plaintiffs who do not allege any overtime violations.  Doc. 443, at p. 25.  Plaintiffs' response to Defendants' motion for omnibus relief did not address Defendants' motion for summary judgment.  *See* Doc. 444.

The Court finds that the evidence offered by Plaintiffs of Defendants' alleged admission of liability will not sustain their initial burden to prove that those Plaintiffs who remain in the case performed work for which they were not properly compensated.  Although Tolia stated in his deposition that Navika analyzed payroll on a bi-weekly basis and employed a policy of not paying earned overtime, that is not sufficient to sustain the burden of proof for each of the remaining Plaintiffs.  Before they are entitled to summary judgment, Plaintiffs must show that they actually worked overtime and were harmed by Navika's pay practice.  Even where an

employer has failed to keep adequate records, Plaintiffs must prove the amount and extent of their uncompensated work as a matter of "just and reasonable inference." *Friewalde*, 339 Fed. Appx., at 445. Plaintiffs here have been provided with the relevant employment records and they must use them to make a definitive offer of proof that the remaining Plaintiffs performed work for which they were not properly compensated before they are entitled to summary judgment. The Court finds Plaintiffs have failed to meet their burden of proof and denies their motion.

With regard to Defendants' motion for summary judgment, the Court notes at the outset of its analysis that the failure of certain Plaintiffs to provide timely or verified discovery responses was resolved by the Court's order on Defendants' motion for sanctions, and therefore, the Court denies Defendants' motion for summary judgment as to those Plaintiffs on that basis. The Court disagrees with Defendants that they are automatically entitled to summary judgment on the claims of the remaining Plaintiff for failure to state a *prima facie* case. In *Von Friewalde v. Boeing*, the Fifth Circuit affirmed a grant of summary judgment against plaintiffs who did not produced any evidence at all and had not provided answers to defendant's interrogatories. 339 Fed. App'x 448 at 456. Plaintiffs here have offered evidence to demonstrate that there was an employer-employee relationship and engagement in activities covered by the FLSA. The evidence presented thus far raises factual issues as to the existence and amount of unpaid overtime.

In addition, each Plaintiff who remains in the action following the Court's order has been ordered to produce a computation of damages. *See supra* Part II.C. This evidence will verify the amount and extent of any allegedly uncompensated work, and the failure of any Plaintiff to produce this evidence will result in that Plaintiff's dismissal. Accordingly, Defendants' motion for summary judgment on the claims of the remaining Plaintiffs is denied with the exception of

the twenty-six Plaintiffs who responded to discovery and did not allege overtime violations.  The Court grants Defendants' motion as to those Plaintiffs.[7]  Also, as to Kathryn Rogers and any other Plaintiff who responded to discovery and whose last date of employment was prior to May 3, 2007, their claims are barred by the statute of limitations and they are dismissed.

## IV.   Defendants' Motion for Decertification

Defendants move for decertification arguing that divergent factual and employment settings permeate the class.  Doc. 443, at p. 31.  The current class includes "current and former non-exempt hotel employees of Defendants Navika Capital Group, LLC, Pearl Hospitality, LLC, Ruby Hospitality, Inc., Naveen Shah, and Esperanza Gutierrez who were not paid minimum and overtime wages between May 3, 2007 and today."  As previously noted, although Defendant Navika does not own the hotels directly, Navika owns stock in the corporate entities that own the hotels.  Due to this corporate structure, the certification of a class of "non-exempt hotel employees" of Defendant Navika includes employees of at least eleven different hotels owned by over twenty corporate Defendants.  *Id.* at p. 34–35.

In support of their decertification motion, Defendants point out that Plaintiffs were employed in numerous hotels under the supervision of different managers, they held different job titles, performed different job duties, and were paid in at least four different methods.  *Id.* at p. 32–36.  Defendants argue that Plaintiffs have failed to identify any generally applicable policy or practice that binds their claims.  *Id.* at p. 27.  They contend that they have never adopted a policy

---

[7] The Court grants Defendants' motion for summary judgment as to the following Plaintiffs:  (1) Nancy Hollis; (2) Patricia Kidder-Harn; (3) Mary Howard; (4) Vodica Wiltz; (5) Bianca Rios; (6) Kora Hicherson; (7) Krista Sparks; (8) Krisann Robey; (9) Tykwan McDonald; (10) Joyce Yvonne Brown; (11) David Singleton; (12) Kendra Rainwater; (13) Marzetta Coleman; (14) Eugenia Golino; (15) Mary Henry; (16) Corrine Johnson; (17) Pamaler Norwood; (18) Balmary Rodriguez; (19) Dora Salinas; (20) Sandra Walker; (21) Mamie Franks; (22) Dawn Thomas; (23) Willis Joseph Rogers; (24) Justin Smith; (25) Robin Rainwater; and (26) John Wareham.

that resulted in wage violations, and that Plaintiffs' anecdotal evidence of alleged violations is insufficient to maintain certification of this large and diverse class.  *Id.* at p. 36.  In support of this argument, they introduced the deposition testimony of Shah, wherein he stated that he has "always instructed everyone associated with Navika that they must follow and obey the law concerning the payment of wages."  Decl. of Naveen Shah, ¶ 5 (Doc. 443-11).  Defendants also claim that they are entitled to assert individualized defenses to Plaintiffs' claims including: (1) whether any of the Plaintiffs were engaged in non-compensable pre- or post-liminary activities; (2) whether any of the Plaintiffs who worked in administrative or managerial positions are exempt under the FLSA; and (3) defenses relating to proof of damages.  Doc. 443, at p. 46–49.

Plaintiffs contest decertification by arguing that factual differences do not warrant decertification where the Defendant employs a "top-down, centralized policy regarding overtime that results in violation of the FLSA throughout the organization."   Doc. 444, at p. 7. Additionally, Plaintiffs allege that "representative testimony of a small number of employees" on the issue of Defendants' defenses is appropriate in this case.  *Id.*, at p. 10-11.

### A. *Legal Standard*

Section 216 of the FLSA provides that a person may maintain a collective action "on behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  The FLSA does not define what it means for employees to be "similarly situated," and courts have developed different approaches to analyzing this issue.  *Compare Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) (employing a two-stage approach to conditionally certify the class for purposes of discovery to learn whether the other employees are in fact similarly situated) *with Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990) (analyzing collective certification according to the Rule 23 class action requirements; i.e., numerosity, commonality, typicality, and

adequacy of representation).  The Fifth Circuit has upheld the use of the two-stage approach defined in *Lusardi* for making this determination.  *See Mooney*, 54 F.3d at 1213 (refusing to specifically endorse a particular methodology for making a class certification decision under Section 216).  This Court adopted the two-step *Lusardi* approach in its order certifying the class. Doc. 34.

At the first stage of the *Lusardi* approach, the district court makes a preliminary determination of whether the other employees in the putative class are similarly situated to the named plaintiffs.  *Mooney,* 54 F.3d at 1213-14.  Courts determine whether the burden has been met using a "fairly lenient standard," requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination."  *Id.* at 1214, n.8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988).  Courts customarily base this initial decision on the pleadings and any affidavits which have been submitted.  *Id.*  Generally, plaintiffs must make a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency."  *Maynor v Dow Chemical Co.*, 671 F.Supp.2d 902, 930 (2009) (citations omitted).  If they succeed in making this showing, then the court conditionally certifies the action and authorizes notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery."  *Mooney,* 54 F.3d at 1214.

The second step in the *Lusardi* approach is typically precipitated by a motion for decertification filed by the defendant once discovery is largely complete.  *Id.* at 1214.  At the second stage, the plaintiff is held to a more stringent burden to demonstrate the employees are in fact similarly situated and the case should be tried as a collective action.  In the second step, "[d]ecertification scrutiny requires the Court to look beyond the pleadings and affidavits; instead,

the Court must determine whether the potential plaintiffs are similarly situated in light of all information gathered during the post-opt-in discovery." *Gallender v. Empire Fire & Marine Ins. Co.*, No. 5:05-cv-220-DCB-JMR, 2007 WL 325792, at * 2 (S.D. Miss. Jan. 31, 2007). "Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively." *Falcon v. Starbucks Corp.*, 280 F. Supp.2d 528, 534 (S.D. Tex. 2008). If the court determines from discovery evidence that the plaintiffs are in fact similarly situated, then the case continues as a representative action. *Id.* If the court finds that the plaintiffs are not similarly situated, then the class is decertified, the "opt-in" plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id.* at 1213-14.

Courts "consider the following factors when determining whether a lawsuit should proceed collectively: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *See, e.g., Lusardi*, 118 F.R.D. at 359; *Johnson v. Big Lots Stores, Inc.,* 561 F. Supp. 2d 567, 574 (E.D. La. 2008); *Proctor,* 250 F.R.D. at 280; *Escobedo v. Dynasty Insulation, Inc.*, EP-08-cv-137-KC, 2009 WL 2382982 (W.D. Tex. July 31, 2009). "The three factors are not mutually exclusive and there is considerable overlap among them." *Johnson*, 561 F. Supp. 2d at 574. With regard to the fairness and procedural considerations, the court considers "whether certification would serve the purposes of a collective action under § 216(b), and then weighs the benefits of a collective action against the prejudice to the defendant and any judicial inefficiencies that could result from allowing plaintiffs to proceed collectively." *Falcon*, 580 F. Supp.2d at 535-36 (citing *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 n.2 (E.D. Mich. 2004). The decision of whether or not to decertify a collective action is within the district court's discretion. *See, e.g., Mooney*, 54 F.3d

at 1213 ("[T]he district court's application of the [legal] standard must be reviewed for abuse of discretion").  Defendants have now moved to decertify the class, therefore the Court will conduct its analysis under the second stage of the *Lusardi* analysis.  Plaintiffs continue to hold the burden to prove that they are similarly situated.  *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citations omitted).

### B.    Analysis

#### 1.    Disparate Factual and Employment Setting of Plaintiffs

The putative class members are quite distinct from one another in that they were employed in different hotels, under different supervisors, performed different job duties, held different job titles, and were subject to differing compensation practices.  Where wide-ranging differences exist in the job experiences of individual employees along key criteria, some courts have held that decertification is warranted.  *See, e.g. Johnson*, 561 F. Supp. 2d at 586.  However, the record here suggests that despite Plaintiffs' differences, they may have been uniformly subject to a "top-down, centralized policy regarding overtime."  *Mahoney v. Farmers Ins. Exch.*, No. 4:09-cv-2327, 2011 WL 4458513, at *8 (S.D. Tex. 2011) (citing *Kautsch v. Premier Comm'ns, Inc.*, No. 06-cv-04035-NKL, 2008 WL 294271 (W.D. Mo. Jan. 31, 2008)).

"If there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication."  *England*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).  Plaintiffs' affidavit evidence, the deposition of Chirag Tolia, and the answers to Defendants' interrogatories indicate that Plaintiffs frequently worked more than forty hours in a week.  The evidence also suggests that all Plaintiffs were paid by the same corporate entity, Navika, pursuant to the same centralized policies of denying overtime.  While the factual and employment settings of the

Plaintiffs may be disparate, the record suggests the existence of a common policy or plan by which Defendants denied Plaintiffs overtime compensation.

2.   ***Various Defenses Individual to Each Plaintiff***

Defendants argue that they may possess individualized defenses to claims of Plaintiffs who held administrative or managerial positions by virtue of the FLSA exemption for "bona fide executive, administrative, or professional" employees contained in 29 U.S.C. § 213.   An employee whose primary duties involve management may be properly exempt from the FLSA's overtime requirement under this section.  29 C.F.R. § 541.700.  The determination of whether an executive employee is properly classified as exempt is "a highly fact-intensive and nuanced inquiry into the particular circumstances of the employee's job."  *Johnson*, 561 F. Supp.2d at 584.

The Court finds that an additional inquiry into whether the small fraction of Plaintiffs who worked in managerial capacities were exempt for the requirements of the FLSA compromises the viability of trying this case as a collective action.  For the vast majority of the class members, who are front desk clerks, housekeepers, and maintenance personnel, inquiry into their non-exempt status is unnecessary.  Therefore, the Court severs the claims of those Plaintiffs who were managers.[8]  Whether or not they were properly classified as non-exempt, they are not similarly situated to the majority of the class who did not work in any executive, administrative or professional capacity.  Thus, collective treatment of their claims with this action is not in the interest of fairness to the parties or efficiency to the Court.

Defendants assert that they also intend to challenge each claimant's evidence of uncompensated time by demonstrating that the activities were incidental pre- or post-liminary

---

[8] The following Plaintiffs are dismissed without prejudice as they are managers and are not similarly situated to the class: (1) Joyce Yvonne Brown; (2) Sheila Collins; (3) Clinton Turner; (4) Krista Sparks; (5) James Lane; (6) Donna Hall-Smith.

activities, as opposed to compensable "principal activities." Doc. 443, at p. 48. They contend that principal activities vary significantly between managers, desk clerks, chambermaids, maintenance personnel, and other positions held by members of the class. Therefore, "whether and to what extent the limited evidence at bar accurately reflects other Plaintiffs' performance of pre- and post-liminary activities will require factual finding for each claimant, and weighs strongly in favor of decertification." *Id.*

Plaintiffs counter that these individualized defenses can be addressed through the use of representative testimony from the class. Plaintiffs state that many courts—including those in the Southern District—"routinely allow parties to address individualized defenses through representative testimony of a small number of employees." *See e.g., Falcon*, 580 F. Supp. 2d at 540 (recounting numerous others instances where courts have endorsed the use of representative testimony in FLSA cases). However, Plaintiffs here have not proposed any specific method for determining which class members will testify or explained how their testimony would be representative.

"The use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs." *Roussell v. Brinker Int'l., Inc.*, No. H-05-3733, 2008 WL 2714079, at *22 (S.D. Tex. July 9, 2008). The Court has serious concerns with the fairness of using representative testimony on the issue of non-compensable pre- or post-liminary activities in this case where the class members held a variety of different jobs, with different duties, in different hotels, and under the supervision of different managers. Before the Court can certify the class, Plaintiffs must propose a plan for using representative testimony to address Defendants' individualized defenses that is both fair and manageable.

As the court in *Roussell v. Brinker* explained under very similar facts,

"the Court is not in a position to delineate workable subclasses at this juncture. The Court will provide Plaintiff with the opportunity, however, to propose an alternative trial plan that renders the use of representative testimony [on this issue] more workable by, for example, further explaining how the selection of testifying opt-ins is adequate to represent all members of the class of by defining sub-classes of opt-ins."

*Roussell*, 2008 WL 2714079, at *24.

Lastly, Defendants argue that they are entitled to assert a defense that Plaintiffs' time records may be applicable to employees who were paid hourly, but not to employees were paid piece-rate or primarily with tips.  Doc. 443, at p. 49.  Without explaining how they intend to prove the amount of earned compensation by those employees who were paid on a piece-rate or tip-based system, Plaintiffs claim that this issue can be resolved by bifurcating the liability and damages phases of the action.  Doc. 444, at p. 10.  Plaintiffs cite to numerous cases, many within this district, where courts approved bifurcation in order to preserve class treatment.  None of those cases, however, concerned the issue involved here, that Plaintiffs were paid using four different methods of compensation, and some Plaintiffs were paid on a piece-rate or tip-based system which is not reflected in the records.  The Court has serious doubts that any form of "representative" proof could fairly determine which piece-rate or tip-based employees were actually denied overtime compensation, let alone how much.

Similar concerns were recently expressed by the Seventh Circuit in *Espenscheid v. DirectSAT USA, LLC*, 705 F.3d 770 (2013) where the court considered an FLSA case where a class of satellite technicians were paid on a piece-rate system.  In *Espenscheid*, the district court concluded that the plaintiff's trial plan for the collective suit was unfeasible and decertified the class.  *Id.* at 773.  The Seventh Circuit upheld the district court's decision to decertify the class,

and expressed particular concern with "representative" proof for piece-rate employees.   The court stated:

> "Consider the complication created by the piece-rate system.  When one is paid by the job rather than by the hour, the hourly wage varies from job to job and worker to worker…The plaintiffs have not indicated how their method of "representative" proof would enable these workers [who were not denied overtime or minimum wages] to be separated when it came time to calculate damages."  *Id.* at 774.  The court also noted, however, "[I]n such a case, where it is class treatment or nothing, the district court must explore the possible ways of overcoming problems in calculating individual damages."

*Id.* at 776.

As with the individualized defenses regarding non-compensable activities, if Plaintiffs wish to offer representative testimony to address Defendants' defenses to the amount and extent of work performed by piece-rate and tip-based employees, they must offer a workable trial plan under which it is reasonable to believe that the representative testimony of the testifying witnesses is similar to the rest of the non-testifying Plaintiffs.  Bifurcation of the damages issue may also be part of Plaintiffs' proposed trial plan.  If Plaintiffs cannot show that it is possible to fairly determine whether and to what extent the Plaintiffs have been undercompensated on a class or sub-class-wide basis, the Court will have to decertify the action.  *See Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (Necessity of calculating damages on an individual basis will not necessarily preclude class certification; however, where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class).

### 3.    *Fairness and Procedural Considerations*

Section 216(b) collective actions are "intended to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."  *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 919 (5th Cir.

2008) (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)).  "A collective action allows…plaintiffs the advantage of lower individual costs to vindicate rights by pooling resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the alleged…activity."  *Hoffman v. LaRoche*, 493 U.S. 165, 170 (1989).

Based on the evidence offered to this point, the Court is persuaded that fairness considerations militate in favor of allowing this lawsuit to proceed collectively.  Although there are factual differences in the employment settings of Plaintiffs, there is some evidence of a "top-down, centralized policy regarding overtime."  As explained in *Falcon v. Starbucks Corp.*, "To a certain extent, any large class of employees working for a nationwide employer alleging FLSA overtime violations will encounter [difficulties of proceeding collectively where there are factual differences], and there is no indication that Congress intended section 216 to only allow small collective actions involving unpaid overtime to proceed."  *Falcon*, 580 F. Supp. 2d at 539-40 (citing *Donohue v. Francis Servs., Inc.*, No. Civ.A04-170, 2004 WL 1406080 at *1 (E.D. La. June 22, 2004) (refusing to decertify a collective action on allegations that the class was too large and noting that "[a]dopting defendants' reasoning would lead to the absurd result that employers could escape FLSA liability by making sure to underpay vast numbers (rather than smaller numbers) of their employees.")).

The Court is concerned, however, that the procedural hurdles implicated in litigating an FLSA case where employees held different jobs in different employment settings and were compensated in different methods may require decertification.  Therefore, the Court defers its ruling on Defendants' motion for decertification and orders Plaintiffs to propose a specific and feasible plan for trying this collective action as it exists following the entry of this order.

"Although it was Plaintiffs' burden to come forward with evidence demonstrating that collective treatment is appropriate in response to Defendant's motion, the Court believes that Plaintiffs should be afforded a final opportunity to demonstrate how this case might proceed collectively." *Roussell*, 2008 WL 2714079, at *24.  Accordingly, Plaintiffs shall have thirty (30) days from the date of entry of this order to file a proposed trial plan.  Defendants will have twenty (20) days to respond to Plaintiffs' trial plan.  The Court will rule on Defendant's motion for decertification following its review of the proposed trial plan and response thereto.

## V.      Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' motion for dismissal or default judgment under Federal Rule of Civil Procedure 37 of the claims of all Plaintiffs who failed to respond to Defendants' interrogatories (Doc. 443) is **GRANTED IN PART AND DENIED IN PART**.

Defendants' motion is **GRANTED** as to the Plaintiffs who failed to submit answers to Defendants' interrogatories before August 27, 2013, and those Plaintiffs are hereby **DISMISSED** without prejudice.  It is further

**ORDERED** that Defendants' motion for dismissal or default judgment as to the Plaintiffs who failed to verify or to timely verify their answers to Defendants' interrogatories in accordance with Rule 33(b)(3) is **DENIED**.  It is further

**ORDERED** that all of the answers to Defendants' interrogatories submitted prior to August 27, 2013 must be supplemented with a verification within twenty (20) days of entry of this order.   Any Plaintiff who fails to supplement his or her answers to Defendants' interrogatories will be dismissed from the case without prejudice.  It is further

**ORDERED** that Defendants' motion for dismissal of all remaining plaintiffs under Rule 37(c)(1) on the basis of their failure to provide a computation of damages as required by Rule 26 is **DENIED**.  It is further

**ORDERED** that all Plaintiffs who remain a party to this action following this order are required to provide Defendants with individual damages computations within twenty (20) days of entry of this order.  Plaintiffs who do not provide an individual computation of damages will be dismissed without prejudice.  It is further

**ORDERED** that Plaintiffs' motion for partial summary judgment (Doc. 420) is **DENIED**.  It is further

**ORDERED** that Defendants' motion for summary judgment (Doc. 443) is **GRANTED IN PART** as to the twenty-six Plaintiffs who responded to discovery and did not allege overtime violations[9] and as to Kathryn Rogers and any other Plaintiff who responded to discovery and whose last date of employment was prior to May 3, 2007.  Defendants' motion for summary judgment is **DENIED** as to the other Plaintiffs who remain in the action following this order.

The Court's order on Defendant's motion for decertification (Doc. 443) is **DEFERRED** until the Court has an opportunity to review Plaintiffs' proposed trial plan and Defendants' response thereto, and ascertain the feasibility of allowing this case to move forward on a collective basis.  To that end, it is further

**ORDERED** that Plaintiffs file a proposed trial plan within thirty (30) days from the date of entry of this order.  Defendants will have twenty (20) days to respond to Plaintiffs' trial plan.

---

[9] The Court grants Defendants' motion for summary judgment as to the following Plaintiffs:  (1) Nancy Hollis; (2) Patricia Kidder-Harn; (3) Mary Howard; (4) Vodica Wiltz; (5) Bianca Rios; (6) Kora Hicherson; (7) Krista Sparks; (8) Krisann Robey; (9) Tykwan McDonald; (10) Joyce Yvonne Brown; (11) David Singleton; (12) Kendra Rainwater; (13) Marzetta Coleman; (14) Eugenia Golino; (15) Mary Henry; (16) Corrine Johnson; (17) Pamaler Norwood; (18) Balmary Rodriguez; (19) Dora Salinas; (20) Sandra Walker; (21) Mamie Franks; (22) Dawn Thomas; (23) Willis Joseph Rogers; (24) Justin Smith; (25) Robin Rainwater; and (26) John Wareham.

So that all parties and the Court have clarity on which Plaintiffs are properly included in the class as the case proceeds to trial, it is further

**ORDERED** that the parties submit a jointly prepared list of all of Opt-In Plaintiffs who are now dismissed from the action or whose claims have been summarily adjudicated by this order, and all Opt-In Plaintiffs who remain in the class.  This list shall be received by the Court within twenty (20) days of the entry of this order.

In light of this opinion and order, and deadlines established herein, it is hereby

**ORDERED** that Docket Call is **RESET** to April 11, 2014, at 1:30 p.m.  The deadline for filing the Joint Pretrial Order is March 31, 2014, and the two-week trial term begins on April 14, 2014.

To avoid prejudice to individual opt-in Plaintiffs who have been dismissed and who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order.  The claims of those Plaintiffs who were not dismissed remain pending herein until the Court issues its ruling on Defendants' motion for decertification.

SIGNED at Houston, Texas, this 17th day of January, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE