UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOANNA MARIE WILSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-1569 |
| | § | |
| NAVIKA CAPITAL GROUP, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants' Motion for Decertification (Doc. 443). Upon review and consideration of the motion, Plaintiffs' Trial Plan (Doc. 451), Defendants' opposition thereto (Doc. 454), Plaintiffs' Supplemental Trial Plan and Amended Damages Model (Doc. 457), and Defendants' response thereto (Doc. 458), the Court finds that Defendants' motion should be granted.

## I.   Background

This is a Fair Labor Standards (FLSA) collective action for unpaid overtime wages brought by two front-desk clerks from two hotels in Texas on behalf of a nationwide class of approximately 330 non-exempt employees in Defendants' hotels. The procedural history of certification issue in this case was summarized in a previous Order as follows:

> [In July 2011,] [t]he Court denied Plaintiffs' motion for conditional certification, finding that the affidavit evidence offered by Plaintiffs did not support a finding of similarly situated employees beyond the two hotels where the named Plaintiffs were employed. Thereafter, Plaintiffs moved the Court to reconsider its order in light of new facts that "Defendants have been cited by the Department of Labor for overtime and minimum wage violations with respect to over 135 hotel employees at several locations in addition to the two at which plaintiffs were employed." The Court granted Plaintiff's motion for reconsideration and conditionally certified a class consisting of "current and former non-exempt hotel employees of Defendants Navika Capital Group, LLC, Pearl Hospitality, LLC,

Ruby Hospitality, Inc., Naveen Shah, and Esperanza Gutierrez who were not paid minimum and overtime wages between May 3, 2007 and today."  Notice was sent to the putative class members and approximately 330 Plaintiffs (collectively, "Opt-In Plaintiffs") returned consent forms.

(Doc. 447 at 3–4) (citations omitted).

Following conditional certification and the issuance of notice, discovery proceeded on a collective basis and both parties moved for summary judgment.

## II.    The January 17, 2014 Order

On January 17, 2014, this Court issued an Opinion and Order (Doc. 447) in which it denied Plaintiffs' motion for partial summary judgment on the issue of Defendants' liability and granted Defendants' motion for omnibus relief in part.  In their motion for omnibus relief, Defendants requested 1) terminating sanctions for Plaintiffs' failures to comply with discovery orders; 2) summary judgment as to all claims; or, alternatively, 3) decertification of the entire action.  (Doc. 443).  The Court granted summary judgment as to the claims of all Plaintiffs who responded to discovery yet did not allege overtime violations or whose claims were barred by the statute of limitations, and denied summary judgment as to the remaining Plaintiffs.  (Doc. 447 at 20–21).

With respect to Defendants' request for sanctions, the Court dismissed without prejudice those Plaintiffs who failed to respond to Defendants' interrogatories before August 27, 2013. (*Id.* at 9–10).  As to those Plaintiffs who submitted answers to Defendants' interrogatories but failed to verify them, the Court ordered that they submit verifications within twenty (20) days of entry of the Court's Order or face dismissal.  (*Id.* at 11–12).  In addition, the Court ordered that all Plaintiffs who wished to remain in the action provide individual damages computations to Defendants within twenty (20) days of entry of the Court's Order or be dismissed.  (*Id.* at 13–14).  For the clarification of the parties and the Court, the Court also ordered the parties to submit

2 / 11

a jointly prepared list of all Opt-In Plaintiffs whose claims were dismissed or summarily adjudicated by the January 17 Order and a list of those Opt-In Plaintiffs who remained in the class within twenty (20) days.  (*Id.* at 33).

The Court deferred ruling on Defendants' motion for decertification.   The Court concluded that the record contained evidence of a top-down, centralized policy to deny overtime pay, and found that "fairness considerations militate in favor of allowing this lawsuit to proceed collectively."  (*Id.* at 25–26, 30).  The Court expressed concern, however, that the disparate factual and employment settings of Plaintiffs undermined the utility of a collective action.  (*Id.*). Plaintiffs worked in different locations, under different supervisors, performed different job duties, held different job titles, and were subject to differing compensation methods.  (*Id.* at 21). Defendants argued that they were entitled to assert individualized defenses to each Plaintiff's claims including (1) whether any of the Plaintiffs were engaged in non-compensable pre- or post-liminary activities; (2) whether any of the Plaintiffs who worked in administrative or managerial positions are exempt under the FLSA; and (3) defenses relating to proof of damages.  (*Id.* at 26–27).  Specifically with regard to damages, Defendants stated that they intended to argue that time records could not be used to ascertain damages for employees who were paid on a piece-rate or tip-based system.  (*Id.* at 28).  Plaintiffs claimed that these defenses could be addressed through the use of representative testimony and the issues of damages for piece-rate and tip-based employees could be resolved by bifurcating the liability and damages phases of the action.  (*Id.* at 27–28).

In the January 17 Order, the Court expressed a number of substantive concerns regarding the feasibility and fairness of allowing the case to proceed to trial as a collective action. Specifically, the Court voiced doubts regarding 1) the fairness of using representative testimony

to address Defendants' individualized defenses, particularly on the issue of compensable and non-compensable pre- or post-liminary activities, in a case with such factually disparate employment settings; and 2) the fairness of using any form of representative proof to fairly determine which piece-rate or tip-employees were actually denied overtime compensation and how much.  (*Id.* at 28).  Accordingly, the Court deferred ruling on Defendants' motion for decertification until Plaintiffs had an opportunity to provide "a specific and feasible plan" to try the action collectively "that is both fair and manageable."  (*Id.* at 27, 30).  The Court stated:

> [I]f Plaintiffs wish to offer representative testimony to address Defendants' defenses to the amount and extent of work performed by piece-rate and tip-based employees, they must offer a workable trial plan under which it is reasonable to believe that the representative testimony of the testifying witnesses is similar to the rest of the non-testifying Plaintiffs.  Bifurcation of the damages issue may also be part of Plaintiffs' trial plan.  If Plaintiffs cannot show that it is possible to fairly determine whether and to what extent the Plaintiffs have been undercompensated on a class or sub-class-wide basis, the Court will have to decertify the action.

(*Id.* at 29 (citing *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006)) (Necessity of calculating damages on an individual basis will not necessarily preclude class certification,  where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class).  Plaintiffs were ordered to file the proposed trial plan within thirty (30) days of entry of the Court's Order,  and Defendants were granted twenty (20) days thereafter to file a response.

## III.    Aftermath of the January 17, 2014 Order

On February 10, 2014, the deadline for compliance with the January 17 Order, Defendants submitted a response to the Court's Order, styled as a "Certification of Michael J. Sheppeard Made Pursuant to the Court's Opinion and Order of 17 January 2014" (Doc. 448).  In the response, Defendants' counsel states that despite earlier efforts to obtain the supplemental verifications, damages computations, and list of plaintiffs from Plaintiffs' counsel, nothing was

received until 7:00 p.m. on the date for compliance, when Plaintiffs' counsel forwarded four verifications, one set of interrogatories, which were untimely, and a proposed list of plaintiffs. (*Id.* ¶ 10).   According to Defendants, Plaintiffs' proposed list included several individuals who had not complied with the January 17 Order.   (*Id.* ¶ 11).   Furthermore, no individual damages computations were ever submitted for any Plaintiff.   (*Id.*).   Defendants' counsel responded by submitting Defendants' proposed list of plaintiffs who were eligible to remain in the action, subject to compliance with the order to provide individual damages computations, and filed the "Certification" with Defendants' proposed list attached in a good faith effort to comply with the January 17 Order.   (*Id.* ¶ 12; Doc. 448, Ex. E).

Plaintiffs never complied with the Court's order to provide a proposed list of Plaintiffs. Instead, minutes before the deadline, Plaintiffs' counsel filed a motion to compel supplemental payroll records and a motion to extend the deadlines set forth in the January 17 Order.   (Doc. 449).   In the motion, Plaintiffs complain they were unable to timely provide damages computations "due to the document production and the Defendants' utter failure to supplement [the employment records] since 2012."   (*Id.* at 6).   They request "weekly time records, hire and termination dates, [and] the wages paid during the relevant pay periods."   (*Id.* at 5).   Plaintiffs' motion was referred to Magistrate Judge Stacy (Doc. 450).

**IV.    Plaintiffs' Proposed Trial Plan**

On February 20, 2014, Plaintiffs timely submitted their proposed trial plan (Doc. 451). Plaintiffs summarize the "plan" as follows:

> "[A]fter having spent innumerable days culling through the some 50,000 pages of documents produced, the undersigned has been able to narrow the issues to two: (1) the remaining plaintiffs worked more than 40 hours in a work week without overtime compensation; and (2) some of those remaining plaintiffs (housekeepers) worked so many more hours over 40 that they did not even make minimum wage.  That is the entire case."

(Doc. 451 at 1).

Plaintiffs offer nothing in the way of a workable plan to divide the Plaintiffs into subclasses, to try the case using representative testimony, or even to bifurcate the damages issue. Plaintiffs also abandon their argument that representative testimony can be used to address Defendants' defenses, and aver that representative testimony will be unnecessary once the Defendants produce supplemental records of the employment data.   (*Id.* at 2).   Plaintiffs incorporate by reference the arguments raised in their motion to compel and posit that once the Defendants produce the supplemental records, the Court can simply "take judicial notice of the math necessary to determine the base rate, overtime premium, and for the housekeepers, the failure to pay minimum wage."   (*Id.*).   If, however, defendants do not supplement their production, "it will be necessary to have testimony on the quantum of hours [plaintiffs] worked." (*Id.* at 4).  Plaintiffs conclude by stating, "[t]he total number of plaintiffs…is [now] less than 70, and of these plaintiffs, a few have reasonable records to demonstrate their overtime/minimum wages owed."  (*Id.* at 5).

On March 10, 2014, Judge Stacy issued an order denying Plaintiffs' motion to compel in its entirety (Doc. 453).   Judge Stacy determined that "Plaintiffs essentially seek an Order requiring Defendants to provide them with concise information from which they can calculate their damages.  Such information, as has been the case for over a year, is in the documents Defendants have produced to Plaintiffs."  (Doc. 453 at 1).  Judge Stacy explained "as has been made clear on at least two occasions, *see* Document Nos. 417 and 433, Defendants are not required to themselves cull through those documents and create a spreadsheet or other document for Plaintiff to use to prove their claims and/or their damages."  (*Id.* at 1–2).  Judge Stacy further clarified that Plaintiffs were not entitled to supplementation of records after September 2012

since the class definition is limited to dates between May 3, 2007 and February 9, 2012.  (*Id.* at 2).

Following the denial of their motion to compel, Plaintiffs filed a "supplemental trial plan" on April 2, 2014—more than six weeks after the deadline for their proposed trial plan.  In their supplemental trial plan, Plaintiffs offer for the first time the names of those Plaintiffs who failed to comply with the January 17 Order and state simply that once the Court dismisses the 14 Plaintiffs who failed to provide timely verifications, the 17 Plaintiffs who are unable to prove damages, and the eight Plaintiffs who are unable to attend trial, only 42 Plaintiffs remain in the case.  (Doc. 457 at 1–2).  Plaintiffs attached as Exhibit C to their trial plan an amended version of the "damage model" attached to, but not referenced in, their motion to compel.  (Doc. 457 at 4–5).  Presumably, Plaintiffs intend for this amended damage model to discharge their obligation to provide damage computations pursuant to the January 17 Order and to supplant the need for a trial plan.

Defendants filed responses to both the original and supplemental trial plans.  (Docs. 454 and 457).  They contend that the entire action should be dismissed in its entirety based on Plaintiffs' failure to comply with the Court's January 17 Order to provide individual damages computations and a workable trial plan.  Defendants argue that "they should not be compelled to defend against amorphous claims where Plaintiffs, who are so factually distinct and geographically disperse[d], have provided no feasible way to adjudicate this matter collectively." (Doc. 454 at 14).  Defendants also argue that Plaintiffs should be estopped from pointing to the damage model, attached as Exhibit C to their Motion to Compel, as their purported compliance with the January 17 Order because 1) Plaintiffs never previously claimed that Exhibit C was intended to fulfill their obligation to provide damage computations; 2) any argument asserted

now that Exhibit C was intended to fulfill their obligation is foreclosed by the fact that the Motion to Compel to which Exhibit C was attached was intended to obtain more information and more time "to comply with this Court's Order" to provide damages computations; (*See* Pl.'s Mot. to Compel at 6, Doc. 449); and 3) despite previous assertions to the Court by Defendants that Plaintiffs had not provided damages computations, Plaintiffs never responded or objected to those assertions by pointing to Exhibit C as evidence of their compliance with the Order.  (Doc. 458 at 3–4).  In addition, Defendants aver that even if Plaintiffs had properly identified Exhibit C to the Motion to Compel as their damages computations, the spreadsheet fails to discharge their obligation to disclose damages pursuant to Federal Rule of Civil Procedure 26 because Plaintiffs have not made available to Defendants the documents or other evidentiary material upon which they relied to arrive at those computations.  (*Id.* at 4).  Such evidence is critical, Defendats argue, as a simple cursory review of the spreadsheet reveals significant issues of accuracy and reliability.  (*Id.* at 5).  In the alternative, Defendants' argue that the class be decertified.

V.     **Discussion**

The Court carefully reviewed the legal standard for decertification of an FLSA collective action and applied the facts of this case in the January 17 Order; the review need not be repeated here.   In that Order, the Court expressed a number of substantive concerns regarding the feasibility and fairness of allowing the case to proceed to trial as a collective action. Specifically, the Court voiced doubts regarding 1) the fairness of using representative testimony to address Defendants' individualized defenses, particularly on the issue of compensable and non-compensable pre- or post-liminary activities, in a case where the class members held a variety of different jobs with different duties, in different hotels, and under the supervision of different managers; and 2) the fairness of using any form of representative proof to fairly

determine which piece-rate or tip-employees were actually denied overtime compensation and how much.  (Doc. 447).

Plaintiffs' offer of a damage model is insufficient to resolve the fairness and procedural issues implicated in this case.  Even though the class has now reduced significantly in size from approximately 330 to 42, none of the Court's concerns regarding the factually distinct and disparate employment settings of the class have been resolved.  Like the original 330 Plaintiffs, the remaining 42 were employed in different hotels across the United States, worked under different supervisors, performed different job duties, held different job titles, and were subject to different compensation practices.  Plaintiffs have not even attempted to delineate sub-classes or offer any other method for using representative testimony from a limited number of the remaining Plaintiffs to address Defendants' defenses.  To the contrary, Plaintiffs admit in their trial plan that if Defendants do not produce supplemental documentation, which the Magistrate Judge has since ruled they are not required to do, "it will be necessary to have testimony on the quantum of hours [Plaintiffs] worked."  (Doc. 451 at 4).  In essence, Plaintiffs ask the Court to allow the case to proceed as 42 "mini-trials."  Regrettably, the Court cannot.

The Court is mindful that Congress intended section 216 of the FLSA to allow similarly situated plaintiffs to proceed collectively and that here, Plaintiffs have presented some evidence of a company-wide policy to deny overtime.  In this case, however, where disparate factual issues, and the issues of damages in particular, predominate over any common issues of law, the remedial purposes of the statute do not justify proceeding collectively.  *See e.g., Johnson v. TGF Precision Haircutters, Inc.*, Civ. A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005) (granting decertification of FLSA collective action despite evidence of an "overarching policy" to deny overtime where "there was a substantial variance of experiences by different plaintiffs

under different mangers and at different shops around Texas"…which "appears to have contributed materially to the dissimilarities of Plaintiffs' experiences."); *Reyes v. Texas Ezpawn, L.P.*, No. 6:03-cv-128, 2007 WL 3143315, *1 (S.D. Tex. Oct. 24, 2007) (granting decertification of FLSA collective action where Plaintiffs alleged uniform policy of misclassification where the evidence revealed a wide array of differences in plaintiffs' individual experiences depending on the management practices of individual store managers).  In its January 17 Order, the Court warned in clear and certain terms that "[i]f Plaintiffs cannot show that it is possible to fairly determine whether and to what extent the Plaintiffs have been undercompensated on a class or sub-class wide basis, the Court will *have* to decertify the action." (Doc. 447 at 29).  Plaintiffs' failure to set forth a workable trial plan leaves unresolved the Court's concerns regarding the fairness of allowing this case to proceed collectively and the Court must decertify the action.

Also in the January 17 Order, the Court ordered all Plaintiffs who remained in the action to submit individual damages computations within twenty (20) days, and explicitly warned that failure to comply would result in dismissal. (*Id.* at 14).  The Court finds that Plaintiffs did not comply with this order.  Plaintiffs' arguments that Defendants' inadequate document production prevented them from complying with the Order must fail.  Plaintiffs had a right to object to Magistrate Judge Stacy's two previous orders denying their motions to compel supplemental records under Rule 72 of the Federal Rules of Civil Procedure, yet failed to do so.  Likewise, to the extent Plaintiffs contend that Exhibit C of their Motion to Compel discharged their obligation to provide damages computations, their argument fails.  The Court ordered that the computations be directed to Defendants—not the Court.  Further, Exhibit C does not comply with the requirement of Rule 26 to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material…on which each computation is based." Fed. R. Civ. P.

26(a)(1)(A)(iii).   These additional disclosures were essential as Exhibit C is rife with inconsistencies and inaccuracies that call into question its reliability.  *See* Doc. 458 at 5–12 (enumerating numerous and significant discrepancies between the damage model and the employment records and interrogatory responses).   Defendants were entitled to know how Plaintiffs arrived at these computations on the date set by the Court.  Plaintiffs' failure to abide by the Court's order to submit damages computations provides further justification for the Court's decision to decertify this class.  *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (holding that the district court acted within its discretion by severing plaintiffs who opted in to an FLSA collective action and who failed to disclose damages calculations without substantial justification).

## VI.  Conclusion

For the foregoing reasons and the reasons expressed in this Court's Opinion and Order entered on January 17, 2014, it is hereby

**ORDERED** that Defendant's Motion to Decertify (Doc. 443) is **GRANTED** and the class is **DECERTIFIED**.  The claims of all individual opt-in Plaintiffs are dismissed without prejudice.  To avoid prejudice to individual opt-in Plaintiffs who have been dismissed and who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order.

SIGNED at Houston, Texas, this 4th day of June, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE